IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

———————————————————

GOVERNMENT EMPLOYEES
INSURANCE COMPANY, a Maryland
corporation,

      Plaintiff,

vs.

CHARLES H. SHROYER, Jr. and
RACHEL L. SHROYER,

      Defendants.

No.     1:15-cv-00306 PJK/SCY

———————————————————

MEMORANDUM OPINION AND ORDER

———————————————————

THIS MATTER comes on for consideration of Plaintiff GEICO's Amended

Motion for Summary Judgment filed August 11, 2015 (Doc. 29) and Defendant Rachel L.

Shroyer's cross-motion for summary judgment filed August 25, 2015 (Doc. 30).  Plaintiff

GEICO filed this declaratory judgment action urging that (1) its UM Selection Form was

valid under New Mexico law, (2) the UM limits under the policy at issue are

$150,000/$300,000, and (3) GEICO does not owe Ms. Shroyer any more benefits under

the policy.  Ms. Shroyer contends that the UM Selection Form is invalid and seeks to

reform the underlying policy to provide $900,000/$900,000 in stacked UM coverage.

The court will grant summary judgment in favor GEICO and deny Ms. Shroyer's cross-

motion for summary judgment.

<u>Background</u>

The parties have stipulated to the basic facts.[1]  Doc. 27 at 1–4; Doc. 29 at 2–4; Doc. 30 at 2 (agreeing with material facts 1–18).  GEICO issued an insurance policy to Defendant Charles H. Shroyer, Jr. insuring his three vehicles.  The policy indicates that the uninsured motorist bodily injury ("UM") limits are $50,000/$100,000—$50,000 per person, and $100,000 per occurrence.  The policy indicates that bodily injury liability ("BI") limits are $300,000/$300,000.  Mr. Shroyer's daughter, Rachel Shroyer, was seriously injured in an accident caused by an uninsured motorist.  There is no dispute that Ms. Shroyer is listed as an additional driver on the policy—she is a Class I insured and can stack the UM limits on the policy.  GEICO paid Ms. Shroyer the entire stacked per-person limits of $150,00 under the UM/UIM coverage of the policy.

The dispute concerns the adequacy of a selection form which allowed Mr. Shroyer to reject or select UM bodily injury coverage and UM property damage coverage.  On that selection form,  Mr. Shroyer checked and initialed the following option and selected an amount of bodily injury coverage as follows:

    ✓
C.S. I select UM/UIM Bodily Injury Coverage and UM Property Damage Coverage
   for the following limits which are equal to or lower than my selected Bodily
   Injury liability limits and Property Damage liability limits . . . .  I understand that
   I have the legal right to purchase UM/UIM coverage in amounts equal to the

---

[1]  Although it is uncontroverted that the New Mexico Superintendent of Insurance approved GEICO's selection form for use in New Mexico, it is unnecessary to decide the legal import of that fact given the outcome.

Bodily Injury and Property Damage liability limits.  I understand that the purchase of UM/UIM coverage limits in an amount less than the Bodily Injury and/or Property Damage liability limits constitutes a rejection of my legal right to purchase the full amount available for this coverage.  I understand that I may change my coverage limit selection at any time by contacting the company.

### UM/UIM Bodily Injury Coverage Limits

Your Bodily Injury Coverage Limit is: $300,000/$300,000
Coverage Limit

| Per Person/Per Accident | VEHICLE 1 | VEHICLE 2 | VEHICLE 3 |
|---|---|---|---|
| ( ) $25,000/$50,000 | $  44.20 | $  44.20 | $  44.20 |
| (x) $50,000/$100,000 | $  66.30 | $  66.30 | $  66.30 |
| ( ) $100,000/$200,000 | $  88.30 | $  88.30 | $  88.30 |
| ( ) $100,000/$300,000 | $  99.30 | $  99.30 | $  99.30 |
| ( ) $300,000/$300,000 | $ 115.20 | $ 115.20 | $ 115.20 |

Having selected the $50,000/$100,000 UM/UIM limit, Mr. Shroyer dated the form (11-7-2013) and printed and signed his name after the phrase: "Agreed by Policyholder/Named Insured."

In so doing, Mr. Shroyer was given the option of (1) rejecting UM coverage, (2) selecting the minimum UM limits ($25/$50), and (3) selecting the maximum UM limits ($300/$300).  The parties have stipulated the selection form is not missing any UM limit options.  Additionally, Mr. Shroyer was given an option to select an option between the minimum and maximum, which he did.  The selection form provides the premium costs for every available UM option.  GEICO does not allow its New Mexico insureds to select different BI limits or different UM limits for different vehicles on a single policy.[2]  All vehicles on a single policy must have the same BI limits, and all vehicles on a single policy must have the same UM limits.  Assuming a BI maximum of $300/$300, if an insured were allowed to make separate selections or rejections of

---

[2]  That said, an insured could have multiple GEICO policies and the BI limits and UM limits on one policy need not be the same as on another policy.

-3-

UM coverage on each of three vehicles, there would be 216 possible combinations of UM coverage.

Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court views the facts in the light most favorable to a party opposing summary judgment.  See Plumhoff v. Rickard, 134 S. Ct. 2012, 2017 (2014). Cross-motions for summary judgment raise an inference that summary judgment is appropriate, but the court has a responsibility to determine whether any genuine issue of material fact exists on either side.  Secs. and Exch. Comm'm v. Am. Commodity Exch., Inc., 546 F.2d 1361, 1365 (10th Cir. 1976).  Normally, only the evidence filed by the parties need be considered in resolving the dispute.  Id. at 1366.  In this diversity case, the court applies New Mexico substantive law and federal procedural law.  Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996).

New Mexico law requires insurers to offer UM/UIM coverage up to the liability limits of the policy.  N.M. Stat. § 66-5-301(A) & (B).  Insureds have the right to reject such coverage, N.M. Stat. § 66-5-301(C), but before such coverage is excluded, an insurer must obtain a valid rejection.  Jordan v. Allstate Ins. Co., 245 P.3d 1214, 1221 (N.M. 2010).   The rejection must be in writing and must be made part of the policy. N.M. Code R. § 13.12.3.9.  The statute and its implementing regulation are intended to

expand coverage and protect members of the public from the hazzard of at-fault

uninsured or under-insured motorists.  See Romero v. Dairyland Ins. Co., 803 P.2d 243,

245 (N.M. 1990) (citing Chavez v. State Farm Mut. Auto. Ins. Co., 533 P.2d 100 (1975)

and Sandoval v. Valdez, 580 P.2d 131 (N.M. Ct. App. 1978)).  Accordingly, these

provisions are interpreted liberally to further their remedial purpose; providing the

maximum of UM/UIM coverage is the default rule, and exceptions are construed strictly

to protect an insured.  Jordan, 245 P.3d at 1219.

In Progressive Nw. Ins. Co. v. Weed Warrior Servs., 245 P.3d 1209, 1213 (N.M.

2010), the New Mexico Supreme Court held that an insurer must offer UM/UIM limits up

to the liability limits of the policy and that an insured's decision to purchase a lower

amount constitutes a rejection of the maximum amount.

Thereafter, the New Mexico Supreme Court explained what is necessary for an

effective rejection of UM/UIM coverage:

> In these cases, we detail for the first time the technical requirements for a
> valid rejection of UM/UIM coverage in an amount equal to liability limits.
> By requiring insurance carriers to list premium costs corresponding to each
> available UM/UIM coverage level, we are providing specific guidance
> concerning the form and manner that valid offers and rejections of
> UM/UIM insurance must take to comply with controlling statutory and
> regulatory provisions.

Jordan, 245 P.3d at 1222.  The court requires insurers to "provide the insured with the

premium charges corresponding to each available option for UM/UIM coverage so that

the insured can make a knowing and intelligent decision to receive or reject the full

amount of coverage[.]"  Id. at 1217.

> The court provided the analysis:
>
> If an insurer does not (1) offer the insured UM/UIM coverage equal to his
> or her liability limits, (2) inform the insured about premium costs
> corresponding to the available levels of coverage, (3) obtain a written
> rejection of UM/UIM coverage equal to the liability limits, and (4)
> incorporate that rejection into the policy in a way that affords the insured a
> fair opportunity to reconsider the decision to reject, the policy will be
> reformed to provide UM/UIM coverage equal to the liability limits.

Id. at 1221.

According to Ms. Shroyer, the selection form is deficient concerning the second

requirement, that the insurer provide the insured with the premium charge for maximum

UM/UIM coverage, the minimum amount of coverage, and "the relative costs for any

other levels of UM/UIM coverage offered to the insured."  Doc. 30 at 4 (citing Jordan,

245 P.3d at 1221).  Citing to Montano v. Allstate, 92 P.3d 1255, 1261 (N.M. 2004), Ms.

Shroyer argues that an insured must be allowed to purchase UM coverage on each car

individually, not on "all cars" or "no cars" basis.  Id.  She relies upon an example

illustrating the holding in that case: an insurer must get written rejections of stacking

before an anti-stacking provision will be valid.[3]  See Montano, 92 P.3d at 1260.  Closely

---

[3]      The example provided:

> As an illustration of our holding, in a multiple-vehicle policy insuring three
> cars, the insurer shall declare the premium charge for each of the three UM
> coverages and allow the insured to reject, in writing, all or some of the
> offered coverages.  Thus, hypothetically, in the case of a $25,000 policy, if
> the premium for one UM coverage is $65, two coverages is an additional

related, she also argues that the selection form is deficient because it does not allow the

insured to select different amounts of coverage for each vehicle, should the insured want

to purchase coverage on multiple vehicles.  Doc. 30 at 6.  "For example, GEICO did not

give Mr. Shroyer the option to purchase 50/100 UM on one vehicle, 100/200 UM on

another and reject UM coverage entirely on the third.  Additionally, GEICO did not give

Mr. Shroyer the option to purchase 25/50 UM on two vehicles and reject UM coverage

entirely on the third."  Id.  She argues that such an option was essential for an informed

decision and that Mr. Shroyer was not given an opportunity to purchase UM coverage on

one or two vehicles instead of all three vehicles.  She further argues that although such an

option would be available had Mr. Shroyer purchased separate policies, this is insufficient

under Jordan because it places the burden on the insured to ask for such an option.  Doc.

30 at 9–10.

    As support for the theory that Montano and its example govern the second element

in the Jordan analysis (informing the insured about premium costs corresponding to the

------

      $60, and three coverages $57 more, the insured who paid all three (for a
total premium of $182) would be covered up to $75,000 in UM bodily
injury coverage.  However, the insured may reject, in writing, the third
available coverage and pay $125 for $50,000 of UM coverage; or the
insured may reject, in writing, the second and third coverages and pay $65
for $25,000 of UM coverage; or the insured may reject all three UM
coverages.  In any event, the coverage would not depend on which vehicle,
if any, was occupied at the time of the injury.

Montano, 92 P.3d at 1260–61.   The illustration suggests the same level of UM coverage
offered on each vehicle, not different amounts as Ms. Shroyer suggests.  Regardless, the
illustration in Montano is but one approach to disclosure and selection given an anti-
stacking provision.

available levels of coverage), Ms. Shroyer relies upon Whelan v. State Farm Mut. Auto Ins. Co., 329 P.3d 646 (N.M. 2014). In pertinent part, Whelan holds that Jordan's retroactive reformation requirements concerning UM rejections do not apply to policies issued before May 20, 2004, the date of the Montano decision. 329 P.3d at 648, 652, 654. That date was selected in part because Montano judicially imposed "a requirement not spelled out in insurance regulations, that insurers disclose the premium costs for each available level of stacked coverage as a means of guaranteeing that consumers can knowingly exercise their statutory rights to UM/UIM coverage." Id. at 653 (emphasis added). The court then described Jordan as following Montano, by requiring premium disclosure for each option. Id.

The Montano case can only bear so much weight, and it would be passing strange to think that the New Mexico Supreme Court would omit mention in Whelan that Montano imposed universal selection and rejection requirements, regardless of whether a policy contained an anti-stacking provision. Montano held that given an anti-stacking provision, an insurance company must obtain a written rejection of stacking. 92 P.3d at 1260, 1263. Premium disclosure was required to ensure that the insured received what he paid for and to protect the reasonable expectations of the insured. 92 P.3d at 1260.

Regardless, Whelan decided the retroactivity of Jordan. Whelan, 329 P.3d at 652, 654. Although Whelan viewed Montano as significant concerning judicial reformation for lack of disclosure, nothing suggests that Montano eclipsed Jordan. Ms. Shroyer argues that because Whelan made Jordan retroactive to all policies issued after Montano,

not just those with anti-stacking provisions, the court must have intended to incorporate the Montano selection and rejection requirements concerning stacking to all policies. Doc. 33 at 3.  This court disagrees, concluding that Ms. Shroyer is over-reading Whelan. One could certainly read Montano in 2004 and conclude that more disclosure would be beneficial in all cases involving UM coverage without concluding that the example contained therein applied to every case.

        In this case, Mr. Shroyer did not reject UM coverage, and selected one level above the minimum offered.  As noted, GEICO allows its insureds to acquire separate policies should they want different levels of UM coverage on different vehicles.  Ms. Shroyer rejects that alternative because it puts the burden on the insured to ask for such an alterative and relies upon Sinclair v. Zurich Am. Ins. Co., No. CV 14-606 WPL/KMB 2015 WL 3830361 (D.N.M. June 22, 2015).  In Zurich, the insurer argued that it satisfied the second Jordan element concerning UM premium disclosure because it provided its commercial insured with a formula to calculate the costs of such coverage and advised how it could obtain information about the actual cost.  Id. at *3.  Not surprisingly, the magistrate judge rejected the argument because it placed the burden on the insured, and making informed decisions about UM coverage requires "the premium costs for all levels of UM/UIM coverage offered to the insured."  Id. at *5.

        This case is totally different, as is evidenced by the selection form where coverage options were disclosed and premium costs were provided.  The New Mexico Supreme Court has indicated that disclosure requirements apply to "available option[s]" or

"available coverage option[s]." <u>Jordan</u>, 245 P.3d at 1217, 1220–21, 1223–24.  There simply is no requirement that an insurer make available, let alone disclose, every permutation regardless of whether it is offered as an option.  Taken to its logical end, Ms. Shroyer's approach would require an infinite number of choices, an approach that is unworkable, particularly if a large number of vehicles are involved or vehicles are changed frequently.[4]  Moreover, coupled with the necessity of securing an effective rejection of UM coverage, Ms. Shroyer's suggestion that an insured be allowed (in the same policy) to elect UM coverage on one vehicle and not another "would simply have caused confusion rather than alleviating it."  <u>See</u> <u>Jaramillo v. GEICO</u>, 6:10–cv–01095 JCH-LFG, Memo. Op. and Order at 15 (D.N.M. Sept. 14, 2011) (rejecting a similar argument), <u>aff'd on other grounds</u>, 573 F. App'x 733 (10th Cir. 2014).  As for electing different levels of UM coverage on different vehicles in the same policy, Ms. Shroyer's proposal is inconsistent with stacking for Class I insureds.  For Class I insureds, UM is a policy-level coverage that follows the person rather than a vehicle-level coverage that follows the vehicle.  <u>See</u> <u>Montano</u>, 92 P.3d at 687 (noting that the coverage does not depend on the vehicle occupied at time of injury).  Accordingly, the coverage on each vehicle is combined.

---

[4]  Ms. Shroyer argues that GEICO could offer different UM amounts on different vehicles (based upon a Declarations page which GEICO submits is in error) and has drafted a selection form that would meet her objections to the current form.  Doc. 30-1.  Of course, a Declarations page is different than a selection form.  Moreover, the court is unpersuaded that New Mexico law imposes a requirement that GEICO not only combine the rejection and selection decision, let alone offer 216 options vis-a-vis a single policy.

In the end, what is required is a meaningful offer of UM coverage and a knowing and intelligent rejection of such coverage.  <u>Marckstadt v. Lockheed Martin Corp.</u>, 228 P.3d 462, 468 (N.M. 2009).  Although a court may require retroactive reformation of coverage based upon an inadequate selection form, it is quite another matter for a court to prescribe what the "available coverage options" are.  The cases relied upon by Ms. Shroyer—<u>Montano</u>, <u>Sinclair</u>, and <u>Zurich</u>—are not to the contrary; they simply do not address the issue in this case.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that:

(1) GEICO's Amended Motion for Summary Judgment filed August 11, 2015 (Doc. 29) is granted; and

(2) Defendant Rachel L. Shroyer's cross-motion for summary judgment filed August 25, 2015 (Doc. 30) is denied.

DATED this <u>1st</u> day of December 2015, at Santa Fe, New Mexico.

_____
United States Circuit Judge
Sitting by Designation

Counsel:
Brant L. Lillywhite and Daniel W. Lewis, Allen, Shepherd, Lewis & Syra, P.A., Albuquerque, New Mexico, and Meloney Perry, Perry Law P.C., Dallas, Texas, for Plaintiff.

Lisa J. Mobley, Ron Bell Injury Lawyers, Albuquerque, New Mexico, for Defendant Rachel L. Shroyer.